# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 9127 | DATE | JUNE 30 , 2004 |
| CASE TITLE | LOCAL 15, INTERNAT'L BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO v. COMMONWEALTH EDISON COMPANY | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for summary judgment [9] is denied. Defendant's motion for summary judgment [13] is granted in part and denied in part. The Clerk of the Court is directed to enter judgment remanding the May 15, 2003 arbitration award concerning Grievance No. 2001-418 Co/P-TC Subcontracting to arbitrator Timothy J. Heinsz in order to make a final arbitration award resolving remaining remedy issues, including what sum or sums should be paid and to whom any sum should be paid.

(11) ■ [For further detail, see attached Memorandum Opinion and Order.]

| | No notices required, advised in open court. | | 3 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | 18 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | June 30, 2004 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| cw | courtroom deputy's initials | 2004 JUN 30 PM 5: 17 FILED-EDI Date/time received in central Clerk's Office | mqm mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LOCAL 15, INTERNATIONAL )
BROTHERHOOD OF ELECTRICAL )
WORKERS, AFL-CIO, )
)
        Plaintiff, )
)
    v. ) No. 03 C 9127
)
COMMONWEALTH EDISON COMPANY, )
)
        Defendant. )



## MEMORANDUM OPINION AND ORDER

Pursuant to § 301 of the Labor Management Relations
Act ("LMRA"), 29 U.S.C. § 185, plaintiff Local 15 of the
International Brotherhood of Electrical Workers, AFL-CIO brought
this action to enforce an arbitration award against defendant
Commonwealth Edison Corporation. Neither party presently
challenges the substance of the arbitration award. The present
dispute concerns whether the arbitration award is final and
enforceable and, if so, the amount of backpay to be calculated
based on the award that was made. Both sides have moved for
summary judgment.

The material facts are not in dispute. The underlying
dispute concerned whether defendant's closing of its Rope Area
violated a provision of the parties' collective bargaining
agreement (the "CBA") concerning contracting out work and whether
allegedly related lay offs also constituted a violation of the



CBA. Article V, § 7 of the CBA provides in part:

> The Company agrees that it will not contract any work which is ordinarily and customarily done by its regular employees if, as a result thereof, it would become necessary to lay off or reduce the rate of pay of any such employees.
>
> It is the Company's objective to reduce the necessity for using outside contractors on work that is ordinarily and customarily done by our employees. Recognizing the Union's long-standing concern over the contracting out of work, management, where circumstances permit, will meet with designated Union representatives for the purpose of reviewing the various alternatives before deciding whether or not to contract out such work. Where time is a critical element in the job preventing a meeting from taking place, a designated Union representative will be notified regarding the need to contract out work.
>
> Before deciding whether or not to contract such work, thorough consideration will be given to providing the opportunity for overtime to the work group involved either instead of or in conjunction with contracting. In addition, consideration will also be given to other alternatives to contracting which would permit greater utilization of Company employees, within the requirements of the work to be performed, and other restraints such as the time within which the work must be completed.

In a ruling dated May 15, 2003, arbitrator Timothy Heinsz sustained in part and denied in part the Union's grievance. The arbitrator found that the Rope Area work had been contracted out, but that there was no violation of the first paragraph of § 7 because the actual employees who had worked in the Rope Area were reassigned to other work, suffering no lay off or reduction of pay. The arbitrator did find that the second and third paragraphs of § 7 were violated in that defendant failed to satisfy the meet-and-discuss and other requirements of those two

paragraphs.  The arbitrator also found there was no violation of the "Valtin" requirement[1] of offering overtime or alternative payments to employees when work is to be contracted out.  The arbitrator awarded the following remedy.

> As a remedy for violating the second paragraph of Article V, Section 7e, the Company is ordered to (1) comply with the meet-and-discuss requirements contained in the second and third paragraphs of Article V, Section 7, with respect to the outsourcing of the Rope Area work and (2) to make whole the employee or employees who would have been performing the A-Mechanic rope work at the appropriate straight-time wage rate for all hours it would have taken to fabricate that rope which would have been worked on in the Rope Area but was purchased from outside suppliers from May 18, 2001, until the Company and Union fulfill their bargaining obligations.

Arb. Award at 28.

The parties thereafter requested reconsideration or clarification.  In a letter dated June 23, 2003, the arbitrator corrected a clerical error in which he had referred to May 18, 2002 instead of May 18, 2001.  He also stated:

> The Company has raised additional issues: (1) that no monetary payment of any kind is payable under the award because neither of the two employees who did any Rope Area work suffered monetary harm, (2) that because Mr. Bishop went on long-term disability in November 2001, he would in no event be entitled to any payment for any period after that time, and (3) because Mr. Koziol spent no more than 25% of his time working on Rope Area work in no event should he receive more than this percentage.  The Union response is

---

[1]The "Valtin" requirement is an interpretation of the CBA contained in a prior arbitration award and which thereafter had been considered to be incorporated into the CBA.

that these implementation issues should be discussed by the parties.

In principle, the Arbitrator agrees with the Union's position as to these additional issues because the parties are best situated to know how to carry out the specific remedy in this case. However, given the nature of the issues raised by the Company, the following guidelines may be of assistance.

The Arbitrator does not share the Company's underlying approach that its meet-and-confer violation resulted in losses to any two specific employees. The Rope Area work involved in this case was not just that of two workers who performed the tasks, but belonged to the bargaining unit. Thus, the basic injury was to the bargaining unit as a whole because the Company failed to meet its negotiation obligation with the employees' exclusive bargaining representative. Had the Company not violated the contract, the rope work would have been performed by some employee during the period from May 18, 2001, until the Company and Union fulfill their bargaining obligation.

The Arbitrator ordered the Company to pay to whom the parties conclude to be the appropriate employee(s) at a straight-time wage rate to [sic] rather than an overtime rate because in June of 2001 employees from the System Shops were laid off. Thus, there were available employees who through recall, transfer or otherwise could have performed the rope work, during regular working hours.

In the Arbitration Award, the arbitrator had noted conflicting evidence regarding the number of employees who had been employed in the Rope Area prior to its closure. The testimony was undisputed that there was one A-Mechanic assigned to the Rope Area fulltime. There was also an A-Mechanic who was ordinarily assigned elsewhere, but who acted as a fill-in and helper in the Rope Area. Estimates of how often the fill-in worked in the Rope Area ranged from 25% to 50% of his time. The

arbitrator noted the conflicting evidence, but made no finding as to how often the fill-in worked in the Rope Area.

It is undisputed that the meet-and-discuss requirement was satisfied as of December 5, 2003 and, therefore, any measure of a backpay remedy is to run from May 18, 2001 to December 5, 2003. Defendant's present position is that the amount of backpay should be measured by the number of hours of work that it would have taken to produce the ropes that were purchased from an outside source during that time period. They calculate this amount as being no more than $99,962.60. Plaintiff's position is that the amount of backpay should be based on the equivalent of 1.25 to 1.5 employees being employed during the time period. Plaintiff contends that, following the clarification letter from the arbitrator, the parties agreed to a compromise of basing the backpay remedy on the equivalent of 1.375 employees for the time period which would calculate out as $198,709.78.

The first question is whether this court has authority to enforce the arbitrator's award. Enforcement is only appropriate if there is a final award as to liability and remedy. General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co., 372 U.S. 517, 519 (1963); Local Union 15 v. Exelon Corp., 2004 WL 769431 *4 (N.D. Ill. April 8, 2004). Where the award includes a monetary payment, the lack of an exact dollar amount will not prevent finality as long as the calculation is simply ministerial. See Dreis & Krump Manufacturing Co. v. International Association of Machinists & Aerospace Workers,

District No. 8, 802 F.2d 247, 251 (7th Cir. 1986); Smart v.
International Brotherhood of Electrical Workers, Local 702,
315 F.3d 721, 726 (7th Cir. 2002); GES Exposition Services,
Inc. v. Bates, 1998 WL 142456 *6 (N.D. Ill. March 20, 1998).
Plaintiff attempts to distinguish these cases on the ground that,
in the present case, the arbitrator did not state that he was
retaining jurisdiction to further interpret or apply the award.
That is not a distinguishing fact, however, because, even absent
an express statement, the arbitrator retains inherent powers to
clarify or reconsider an award.   See Glass, Molders, Pottery,
Plastics & Allied Workers International Union, AFL-CIO, CLC,
Local 182B v. Excelsior Foundry Co., 56 F.3d 844, 848 (7th Cir.
1995); Brown v. Witco Corp., 340 F.3d 209, 217 (5th Cir. 2003).
Unless the arbitrator's award was sufficiently clear as to how to
calculate the dollar remedy, plaintiff's attempt to enforce the
award itself is premature.

        Calculating the dollar amount of the backpay award would
not be a mere ministerial act.  The arbitrator did not make clear
whether the backpay award should be based on the number of
employees who were displaced or the actual number of hours it
would have taken to produce the rope that was purchased from an
outside source.  And even if the arbitrator's award could be read
as choosing one or the other measurement, the calculation would
not be a ministerial task.  As to the first method, conflicting
evidence was presented as to the number of employees that had
previously performed the work and the arbitrator did not resolve

that factual issue.  As to the second method, the arbitrator did not have the supporting evidence before him and defendant does not presently present conclusive evidence as to an appropriate calculation.  There is not a final award of an arbitrator that may be enforced.

However, plaintiff's present contention does not directly involve enforcement of the arbitration award.  Although plaintiff does not expressly characterize its argument in this manner, it is actually arguing in favor of enforcing an oral agreement settling the method for calculating the amount of backpay. Defendant contends the court cannot resolve that issue because it is a contract dispute and any contract dispute between the parties must first be brought before an arbitrator.  The actual arbitration clause in the CBA, however, is more narrow than defendant's description of it.

Article VIII, § 5 of the CBA provides in part:

> Should any dispute or difference arise between the Company and the Union or its members as to the interpretation or application of any of the provisions of this Agreement or with respect to job working conditions, the term working conditions being limited to those elements concerned with the hours when an employee is at work and the acts required of the employee during such hours, the dispute or difference shall be settled through the grievance procedure.
> * * *
> A dispute as to whether a particular disagreement is a proper subject for the grievance procedure shall itself be treated as a grievance.

A separate agreement to settle an arbitration award is distinct from the Agreement (CBA) itself. The purported settlement agreement, however, is related to the CBA itself and related to enforcing a term of the CBA. It is not unreasonable or frivolous to contend that enforcement of the purported settlement agreement involves interpretation or application of a provision of the CBA. In any event, any dispute as to whether a particular dispute falls within the terms of the grievance and arbitration provision of the CBA must first be presented to the arbitrator. The court will not consider whether a genuine factual dispute exists as to whether there is an enforceable settlement agreement resolving the amount of the backpay award.

Where there is no final and enforceable arbitration award, the appropriate action is to remand the case to the arbitrator for further proceedings. Local Union 15, 2004 WL 769431 at *5-6; GES, 1998 WL 142456 at *5. The arbitration award will be remanded to the arbitrator in order to make a final arbitration award resolving the remedy issue.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment [9] is denied. Defendant's motion for summary judgment [13] is granted in part and denied in part. The Clerk of the Court is directed to enter judgment remanding the May 15, 2003 arbitration award concerning Grievance No. 2001-418 Co/P-TC Subcontracting to arbitrator Timothy J. Heinsz in order to make a final arbitration award resolving remaining remedy issues,

including what sum or sums should be paid and to whom any sum
should be paid.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED: JUNE 30 , 2004

# United States District Court
## Northern District of Illinois
### Eastern Division

LOCAL UNION 15, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 03 C 9127

COMMONWEALTH EDISON COMPANY

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that judgment is entered remanding the May 15, 2003 arbitration award concerning Grievance No. 2001-418 Co/P-TC Subcontracting to arbitrator Timothy J. Heinsz in order to make a final arbitration award resolving remaining remedy issues, including what sum or sums should be paid and to whom any sum should be paid.

Michael W. Dobbins, Clerk of Court

Date: 6/30/2004

*Carol Wing*

Carol Wing, Deputy Clerk